1
2
3
4
5
6
7
8

Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

9

10    **UNITED STATES DISTRICT COURT**
11    **SOUTHERN DISTRICT OF CALIFORNIA**
12

13    CASEY FOX, individually and on       Case No. **'25CV1552 WQHDEB**
14    behalf of all others similarly situated,

15              *Plaintiff,*                **CLASS ACTION COMPLAINT**
16
17    v.                                    Jury Trial Demanded

18    A.O. SMITH WATER TREATMENT
19    (NORTH AMERICA), INC.,

20              *Defendant.*
21
22
23
24
25
26
27
28

Class Action Complaint

# Table of Contents

I.      Introduction................................................................................1

II.     Parties..........................................................................................5

III.    Jurisdiction and Venue...............................................................5

IV.     Facts............................................................................................6

        A.      Defendant's fake sales and discounts................................6

        B.      Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.........................20

        C.      Defendant's advertisements are unfair, deceptive, and unlawful...............23

        D.      Defendant's advertisements harm consumers..................24

        E.      Plaintiff was misled by Defendant's misrepresentations...........................26

        F.      Defendant breached its contract with and warranties to Plaintiff and the putative class..........................29

        G.      No adequate remedy at law............................................30

V.      Class Action Allegations..........................................................31

VI.     Claims.......................................................................................32

        First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq..........................32

        Second Cause of Action: Violation of California's Consumer Legal Remedies Act  (By Plaintiff and the Class)..........................34

        Third Cause of Action: Violation of California's Unfair Competition Law.......37

        Fourth Cause of Action: Breach of Contract.............................39

        Fifth Cause of Action: Breach of Express Warranty.................40

        Sixth Cause of Action: Quasi-Contract/Unjust Enrichment..................41

        Seventh Cause of Action: Negligent Misrepresentation.............42

        Eighth Cause of Action: Intentional Misrepresentation..............43

VII.    Relief........................................................................................44

Class Action Complaint                          i.

# I.     Introduction.

1.      Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.      Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.      Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5.      In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6.      Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

Class Action Complaint                    1

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7.     As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8.     Defendant A.O. Smith Water Treatment (North America), Inc. ("Defendant" or "Aquasana") manufactures, markets, and sells Aquasana-branded products, including online through the Aquasana website, www.aqauasana.com ("Aquasana Products" or "Products"), and over the phone through the toll-free number advertised on the website.

9.     Defendant advertises purported regular prices and purported limited-time sales offering steep discounts from those listed regular prices. For example, "Up to 55% OFF Sitewide!" or "50% Off Whole House Filters and Water Conditioners.":



*Captured February 17, 2025*



*Captured April 24, 2025*

1
2
3
4
5
6
7
8
9
10
11
12



13

*Captured June 5, 2025*

14
15
16
17
18
19
20
21
22
23
24
25
26



27

*Captured November 26, 2024*

28

Class Action Complaint                    3

10.     Defendant also advertises that the sales are limited in time, by using language like "LIMITED TIME" and "ENDS TODAY!" For example:

**60% OFF WHOLE HOUSE SYSTEMS + FREE SHIPPING - LIMITED TIME!**

*Captured December 18, 2024*

**50% OFF UNDER SINK SYSTEMS - ENDS TODAY!**

*Captured January 7, 2025*

11.     Far from being time-limited, however, steep discounts on Defendant's Products are nearly always, if not always, available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discounts the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are available almost all the time.

12.     As described in greater detail below, after reviewing Defendant's website, aquasana.com, and seeing and relying on an advertised sale, Plaintiff bought Products from Defendant. When Plaintiff made his purchase, Defendant advertised that a purported sale was going on, and Plaintiff believed that he was being offered steep discounts from the purported regular prices that Defendant advertised. And based on Defendant's representations, Plaintiff believed that he was purchasing Products whose regular prices and market values were the purported list prices that Defendant advertised, that he was receiving substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs caused Plaintiff to buy from Defendant.

Class Action Complaint                    4

13.     The representations that Plaintiff relied on, however, were not true. The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendant been truthful, Plaintiff and other consumers like him would not have purchased the Products, or would have paid less for them.

14.     Plaintiff bring this case for themselves and other customers who purchased Aquasana Products from Defendant.

## II.     Parties.

15.     Plaintiff Casey Fox is domiciled in Fallbrook, California.

16.     The proposed class includes citizens of every state.

17.     Defendant A.O. Smith Water Treatment (North America), Inc. is a Texas Corporation with its principal place of business at 6310 Midway Road, Haltom City, TX 76117.

## III.     Jurisdiction and Venue.

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

19.     The Court has personal jurisdiction over Defendant because Defendant sold Aquasana Products to consumers in California, including to Plaintiff.

20.     Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Aquasana Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's

Class Action Complaint                          5

conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. Defendant's fake sales and discounts.

21.    Defendant A.O. Smith Water Treatment (North America), Inc. ("Aquasana") manufactures, distributes, markets, and sells Aquasana-branded Products ("Products"). Aquasana sells its Products directly to consumers, including through its website, aquasana.com, as well as over the phone through a toll-free number available on the website.

22.    Defendant creates the false impression that its Products' regular prices are higher than they truly are.

23.    Defendant frequently advertises steep discounts on its Products. These discounts regularly offer "X% off" or "Up to X% off," or show the purported regular prices in strikethrough font alongside purported "Sale Price[s]," often in colorful font (e.g., "$~~1,998.00~~" next to a "Sale Price" of "$999.00"). Reasonable consumers reasonably interpret Defendant's advertisements to mean that they will be getting a discount off of the prices that Defendant usually charges for its Products. But these discounts run constantly, and Defendant advertises them prominently.

24.    Defendant regularly advertises "sitewide" sales on its homepage and on banners across the website, offering purported discounts on nearly all of Defendant's products.[1] For example:

---

[1] Defendant's sales include some limited restrictions. Most notably, its "replacement" filters are regularly excluded from its sales. It's other products, however—including the Products purchased by Mr. Fox—are almost always available at a purported sale price.

Class Action Complaint                6

1
2
3
4
5
6
7
8
9
10



*Captured November 9, 2023*

11
12
13
14
15
16
17
18
19



*Captured December 11, 2023*

20
21
22
23
24
25
26
27
28

*Captured May 29, 2024*

Class Action Complaint                    7

**Anniversary Sale - Up to 55% OFF Sitewide!**

*Captured September 26, 2024*

**The Semi-Annual Sale - Up to 55% OFF Sitewide!**

*Captured March 17, 2025*

**Week of Savings - Up to 50% OFF Sitewide!**

*Captured October 9, 2024*

25.     And, even on days where Defendant's website does not show a banner advertising a "sitewide" sale, purported sales on the Aquasana Products are still routinely advertised on different product category pages across the website (for example, "Whole House Filters," "Under Sink Systems," "Countertop Systems," and "Shower Filters"). Examples of this type of advertising are shown below:

Class Action Complaint                    8





*Captured March 17, 2025*



*Captured September 10, 2024*

Class Action Complaint                    9



*Captured October 31, 2023*



*Captured April 15, 2024*



*Captured December 16, 2023*

26.     Defendant also advertises its purported discounts at checkout, by showing consumers the "sale" price next to the purported regular price in strikethrough font:



Class Action Complaint                11

27.    If consumers call Defendant via the tollfree hotline advertised on its website, they can request and receive a price quote from Defendant's sales representatives before placing their order. The price quotes also advertise supposedly discounted "sale price[s]" off of the purported regular prices. For example:

**Recommended System**

Quote # 20283195                    Quote Date 05/30/2024

| | QTY | MSRP | Sale Price |
|---|---|---|---|
| WH-1011 RHINO CHLORAMINES + SFWCT + LM UPGRADE | 1 | $4,496.00 | $1,923.20 |
| AQ-SFRO SmartFlow Reverse Osmosis Brushed Nickel | 1 | $449.99 | $200.00 |

28.    Defendant represents that it's sales and discounts will only be available for a limited time, but in reality, they are consistently available. For example, as depicted below, Defendant represents that sales are "limited time" or expire on a particular date. To reasonable consumers, this means that the sale will stop running soon, and Defendant's Products will no longer be on sale and will retail at their purported regular price. But after Defendant's purportedly limited time sales end, Defendant generates another similar discount.

29.    For example, on March 14, 2025, Defendant advertised a purportedly time limited sale on its whole house filter systems, advertising that it was available until "Mar[ch] 17":

Class Action Complaint                    12



30. However, on March 21, 2025—several days after the sale was supposed to have ended—Defendant advertised the exact same sale and purported discount prices, this time as "Limited Time":



Class Action Complaint                    13

31.     Reasonable consumers believe that Defendant's sales are only available for a limited time, but, as shown above, they continue constantly, and are continuously replaced by similar sales. The list (or strike-through) prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

32.     To confirm that Defendant consistently offers discounts off purported regular prices that are automatically applied to all orders, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org)[2] and screen captures from the aquasana.com website. Plaintiff's counsel reviewed screen captures of various pages on aquasana.com, including product category pages (for example, the "Whole House Filters," and "Under Sink Systems," pages). These pages confirmed that Defendant's sales have persisted continuously for years. Plaintiff's counsel reviewed screenshots of the "Under Sink Systems" page for each available day on the Wayback Machine from January 2023 to May 2025. Of the 36 screenshots, 30 (over 83%) showed a substantial sale (of more than 50%) on all items. Similarly, Plaintiff's counsel reviewed screenshots of the "Whole House Filters" page for each available day on the Wayback Machine from January 2023 to May 2025. Of the 34 screenshots, 26 (over 76%) showed a substantial sale (of more than 50%) on all items. This shows that Defendant's products are on sale the vast majority of the time—even before the additional discounts Defendant offers all of its customers on days when no automatic discount is advertised (described below) are factored in. Thus, the listed regular prices are not the actual regular or prevailing prices of those products.

---

[2] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/.

33.    In addition to the persistent sitewide and category-specific sales Defendant automatically applies to all orders just described, even on days where Defendant is not advertising a sitewide or category-specific discount that automatically applies to all orders, it still offers consumers substantial discounts on all Aquasana Products through the use of generally available discount codes that can be applied to all orders.  It does this in multiple ways, including via a spinning wheel that always provides an up to 50% off discount code, and by offering "Up to 50% Off" discount codes if consumers provide Defendant with their email addresses.

34.    First, on days where Defendant does not advertise substantial discounts that automatically apply to orders, when consumers visit Defendant's website, they are shown a pop-up that invites them to "Spin the wheel for a Limited Time Offer" and "spin to win":



35.    The wheel purports to include a number of potential discounts and offers, and reasonable consumers expect that there is an equal chance (or at least some chance) of receiving any one of the discounts or offers shown when they "spin" the wheel. In reality, however, if consumers click to spin the wheel, Defendant's website always states "Congratulations! You have access to our highest offer Up to 50% Off.":



36.    In addition to the wheel—and even if consumers decline to spin it or decline the associated offer—Defendant's website also presents consumers with a pop-up that offers them "Up to 50% Off" if they provide their email address:

1
2
3
4
5
6
7
8
9
10

11    37.    If consumers enter their email address,[3] the website then sets a browser
12  cookie on the user's device. The cookie is used to identify that user and trigger a
13  banner, which is consistently shown at the top of Defendant's website, offering "Up to
14  50% Off" and providing a code to get the discount. For example:

15
16    
17

18    38.    And, even if consumers decline to provide their email address the first
19  time, the pop-up is displayed an additional time if they continue to scroll through the
20  website.
21    39.    Thus, even on days when Defendant's website is not offering discounts
22  that are automatically applied, it still provides the same discounts to consumers
23  through coupon codes that are offered to consumers in multiple ways. And, because
24  consumers are motivated by discounts and the desire to pay lower prices, many
25  consumers do click to spin the wheel, or else provide their email addresses, in order to
26  receive a discount. And, for the same reason, and because Defendant advertises the

27
28    _____
    [3] In addition, if consumers provide their email addresses in response to this first
  pop-up, a second pop-up appears offering consumers an additional $5 off if they
  provide their mobile phone number and consent to receive marketing messages.

associated promotional codes prominently on the website, the vast majority of consumers use those codes when they purchase Aquasana Products on the website. As a result, even during those infrequent periods during which no discounts that are automatically applied to orders are advertised, substantial discounts (usually of 50% or more) are still made available to all consumers. In short, substantial discounts are always or nearly always offered to all consumers; and Defendant's advertised prices are not the regular prices or prevailing market prices for Defendant's products.

40.    Reasonable consumers do not realize the fake nature of Defendant's advertised sales and discounts. It is not apparent from merely purchasing the Products, because the sales appear to be bona fide sales. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website and notices that promotions were available on multiple days would reasonably believe that there happened to be another sale. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sales are not limited in time, and that both the discounts and the advertised regular prices are fake.

41.    Using the tactics described above, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during a promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

42.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were offered for sale before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the limited-

time sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers buying from Defendant had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

43.    Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant regularly offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are consistently available for less than that, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are regularly available.

44.    In some places on its website, Defendant identifies its regular prices as "MSRPs," which means the "manufacturer's suggested retail price," that is, a price established or suggested by a third-party manufacturer. As the FTC regulations explain, "[m]any members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain." 16 C.F.R. § 233.3. Accordingly, Defendant's MSRP notation further conveys to reasonable consumers that Defendant's purported list prices are the "regular" prevailing prices at which the Aquasana Products are typically sold, as well as the former prices that the Products were sold for prior to the advertised sale. In fact, however, Defendant's advertised "MSRPs" are not the

Class Action Complaint                    19

prices at which the Products are generally sold. In other words, they are not the prices at which substantial sales are made. *See* above (explaining that Defendant does not regularly sell its products at the purported MSRPs); § IV(B) below (explaining that the Aquasana Products are also routinely sold for less than the purported MSRPs by third-party retailers). In reality, the Products are not regularly sold at the MSRPs. Denoting those prices as "MSRPs" is misleading to reasonable consumers for this reason.

45.    Moreover, denoting those prices as "MSRPs" is misleading for a second reason: here, Defendant is both the manufacturer and the retailer. The Products are manufactured by Defendant, directly or by an agent under Defendant's direction and control. So, the purported MSRPs were not suggested to Defendant by a third-party manufacturer. Instead, they are made-up prices that Defendant puts on its website to trick consumers into thinking that they are being offered a genuine bargain, when in fact they are not.

**B.    Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.**

46.    As explained above, Defendant sells its Aquasana Products through its website, www.aquasana.com. Some Aquasana Products are also available through a small number of third-party websites and retailers, including Amazon, Home Depot, Walmart, and Lowes.

47.    Regularly, Aquasana Products are available from third-party websites and retailers for prices below Defendant's listed regular prices, or it's listed "MSRPs." For example, on June 11, 2025, Defendant advertised its "Rhino" whole home filtration system at a "sale price" of $999.00, with a listed regular price (or MSRP) of $1,998.00:

Class Action Complaint                    20



48.    On the same day, the product was available on Amazon for $999.00—the supposedly discounted price Defendant was advertising:[4]

49.    Plus, a third-party Amazon price tracker reveals that in the three months prior to June 11, 2025, the price of the Aquasana Rhino filter on Amazon was consistently $999.00—the purportedly discounted price shown on Defendant's website. And Google Shopping data (which shows the "typical" price for products over the prior three months based on stores across the internet) shows that the Rhino Product is typically sold by retailers across the web for the purportedly discounted price of $999.00—nowhere near Defendant's advertised regular price of $1,998.00:

_____

[4] On June 11, 2025, the product was also available for the purportedly discounted $999.00 on Home Depot, Lowes, and Walmart's websites.



50.    This trend is not limited to the Aquasana Rhino Product. As shown in the chart below, Defendant's products are routinely sold by third-parties like Amazon at the purported "sale price[s]" shown on Defendant's website, rather than the advertised regular prices:

| Product | Aquasana's advertised regular price (6/11/25) | Aquasana's advertised sale price (6/11/25) | Amazon.com's price (6/11/25) |
| --- | --- | --- | --- |
| Rhino Max Flow with Conditioner and Pre-Filter | $4,594.00 | $2,297.00 | $2,297.00 |
| Rhino with Conditioner, UV Filter, and Pro-Grade Bypass Kit | $5,192.00 | $2,596.00 | $2,596.00 |
| Rhino with Pro-Grade Bypass Kit | $2,196.00 | $1,098.00 | $1,098.00 |

51.    In short, as the above shows, Defendant's Products are regularly available from third-party websites and sellers for less than the purported regular prices that Defendant's website advertises. This is not surprising, as prices charged on third-party websites and by third-party retailers converge on Defendant's price, especially since the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

Class Action Complaint                    22

52.     Moreover, regardless of third-party websites' and retailers' prices, Aquasana Products are primarily sold through Defendant's branded website, www.aquasana.com. If consumers are searching for an Aquasana Product, they will go to Defendant's website. For example, if a consumer Googles "Aquasana filter," the first sponsored and unsponsored result leads to www.aquasana.com. So, because the Aquasana Products are most commonly sold on Defendant's website, they are most commonly sold for the discounted prices available on Defendant's website.

53.     Moreover, as discussed above, Aquasana Products are regularly available on Amazon—one of the world's largest retailers of consumer goods—for far lower prices than Defendant's listed regular prices. Thus, between sales on Defendant's website and Amazon, the Products routinely and predominantly sell for prices below Defendant's purported regular prices, and the listed regular prices are not the prevailing market rates.

**C.    Defendant's advertisements are unfair, deceptive, and unlawful**

54.     Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

55.     Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

56.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

57.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated

Class Action Complaint                23

price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

58.    And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. See Cal. Bus. & Prof. Code § 17200.

59.    Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**D.    Defendant's advertisements harm consumers.**

60.    Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

61.    Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

62.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

63.    Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[5] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[6]

64.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[7]

65.    Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations,

---

[5] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[6] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[7] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**E.    Plaintiff was misled by Defendant's misrepresentations.**

66.    On May 30, 2024, while residing in Fallbrook, California, Plaintiff Casey Fox purchased a Aquasana Rhino Whole House Water Filtration System and an Aquasana SmartFlow Reverse Osmosis Water Filter from Defendant.

67.    On the day Mr. Fox made his purchase, Defendant was advertising a substantial and limited-time sale on its website, including on all "Whole House Filters," and "Under Sink Systems," like the Products Mr. Fox purchased:



*Captured May 29, 2024*

Whole House Filters:

*Captured May 30, 2024*

Under Sink Systems:



*Captured May 29, 2024*

68.     Prior to making his purchase, Mr. Fox reviewed Defendant's website and saw that Defendant was advertising these substantial, time-limited discounts, including on the Products he was interested in purchasing. Mr. Fox added the products to his cart. Then, realizing he had a question, he called the Aquasana help line, advertised on the website. The Aquasana sales representative he spoke with answered his questions and sent him a price quote, which—like Defendant's website—showed that he would receive a substantial discount on his purchase, including by showing a purported regular price alongside a purported "sale price."

69.     After receiving the price quote, Mr. Fox completed his purchase. Ultimately, he paid a purportedly discounted price of $1,923.20 for the Aquasana Rhino Product, which was advertised with a regular price of $4,496.00, for a total purported discount of $2,572.80. And he paid a purportedly discounted price of $200.00 for the Aquasana SmartFlow Product, which was advertised with a regular price of $449.00, for a total purported discount of $249.00.

70.     Mr. Fox read and relied on the representations shown above on Defendant's website, specifically that the Products had the regular prices listed on the

Class Action Complaint                    27

website in strikethrough font, but were being offered at a discounted "sale price" from those regular prices, and that the sale was limited time and would end on "May 31." Mr. Fox also read and relied on the representations in the price quote he received, also showing that the Products had a listed regular price, but were being offered to him at a lower, sales price. Based on Defendant's representations described above, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products he was purchasing at the published regular prices (shown in strikethrough), that these regular prices were the prevailing price and market value of the Products that he was buying, that he was receiving the advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the limited time promotion), and that the products would go back to retailing for the published regular prices when the promotion ended. He would not have made the purchase if he had known that the Products were not discounted as advertised, and that he would not be receiving the advertised discounts.

71.    In reality, as explained above, Aquasana Products, including the Products that Plaintiff purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Products that Plaintiff purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendant's products are regularly on sale.

72.    Plaintiff faces an imminent threat of future harm. He would purchase additional water filtration systems from Defendant again in the future if he could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while he could watch Defendant's website for a sale on the day that it is supposed to end to see

Class Action Complaint                          28

1  if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale
2  is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely
3  on Defendant's advertising in the future, and so he cannot purchase the Products that
4  he would like to purchase.

5       **F.**    **Defendant breached its contract with and warranties to Plaintiff and**
6              **the putative class.**

7       73.    When Plaintiff, and other members of the putative class, purchased and
8  paid for Aquasana Products that they bought as described above, they accepted offers
9  that Defendant made, and thus, a contract was formed each time that they made
10  purchases. Each offer was to provide Products having a particular listed regular price
11  and market value, and to provide those Products at the advertised discounted price.

12       74.    Defendant's advertisements, for example on its website, and in its price
13  quotations, list the market value of the items that Defendant promised to provide
14  (which, for Plaintiff, are detailed above). Defendant agreed to provide a discount equal
15  to the difference between the regular prices, and the prices paid by Plaintiff and
16  putative class. For example, Defendant offered to provide Mr. Fox (among other
17  things), the Aquasana Rhino Product, with a market value of $4,496.00, a discount of
18  $2,572.80, and a discounted price of $1,923.20. Similarly, Defendant offered to
19  provide Mr. Fox (among other things), the Aquasana SmartFlow Product, with a
20  market value of $449.00, a discount of $249.00, and a discounted price of $200.00.

21       75.    Defendant also warranted that the regular price and market value of the
22  Products Plaintiff purchased were the advertised list prices and warranted that Plaintiff
23  was receiving a specific discount on the Products.

24       76.    The regular price and market value of the items Plaintiff and putative class
25  members would receive, and the amount of the discount they would be provided off the
26  regular price of those items, were specific and material terms of the contract. They
27  were also affirmations of fact about the Products and a promise relating to the goods.

28

Class Action Complaint         29

77.     Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

78.     Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

### G.     No adequate remedy at law.

79.     Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

80.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims.

81.     In addition, to obtain a full refund as damages, Plaintiff must show that the Product he bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that he would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

82.     Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

Class Action Complaint                          30

83.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing water filtration systems from Defendant again in the future if he could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase water filtration systems he would like to purchase.

**V.    Class Action Allegations.**

84.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- The Class: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Aquasana Products advertised at a discount.

85.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

86.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

Class Action Complaint                                31

87.    Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

88.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

89.    Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Aquasana Products advertised at a discount. There are no conflicts of interest between Plaintiff and the class.

***Superiority***

90.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### First Cause of Action:

### Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.

### (By Plaintiff and the Class)

91.    Plaintiff incorporates each and every factual allegation set forth above.

Class Action Complaint                    32

92.     Plaintiff brings this cause of action on behalf of himself and members of the Class.

93.     Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

94.     Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and class members.

95.     As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, $100.00) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

96.     The prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is consistently a heavily-advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are limited in time (such as representations that a sale is "limited time" or will end on a specific date) are false and misleading too.

97.     In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of

Class Action Complaint                    33

the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

98.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Aquasana Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

99.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Aquasana Products.

100.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

101.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

102.    For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## Second Cause of Action:

## Violation of California's Consumer Legal Remedies Act
### (By Plaintiff and the Class)

103.    Plaintiff incorporates each and every factual allegation set forth above.

104. Plaintiff brings this cause of action on behalf of themselves and members of the Class.

105. Plaintiff and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

106. Plaintiff and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

107. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

108. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

109. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

110. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

111. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

112. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of

Class Action Complaint                    35

Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, (4) misrepresenting the reason for the sale (*e.g.*, "Anniversary Sale" when in fact Defendant has ongoing sales).

113.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

114.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Aquasana Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

115.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Aquasana Products.

116.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

117.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

118.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the Class, seeks injunctive relief.

119.    CLRA § 1782 NOTICE. On June 6, 2025, a CLRA demand letter on behalf of Mr. Fox was sent to Defendant's Texas headquarters via certified mail (return receipt requested). The letter provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive

Class Action Complaint                    36

practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the Class will seek all monetary relief allowed under the CLRA.

120.   The CLRA venue declarations are attached.

## **Third Cause of Action:**

## **Violation of California's Unfair Competition Law**

## **(By Plaintiff and the Class)**

121.   Plaintiff incorporates each and every factual allegation set forth above.

122.   Plaintiff brings this cause of action on behalf of himself and members of the Class.

123.   Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

### *The Unlawful Prong*

124.   Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1

### *The Deceptive Prong*

125.   As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

126.   Defendant's representations were misleading to Plaintiff and other reasonable consumers.

127.   Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

Class Action Complaint                    37

*The Unfair Prong*

128.   As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

129.   Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

130.   The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

131.   Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

132.   Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

133.   For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Aquasana Products. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

134.   In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Aquasana Products.

135.   Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

Class Action Complaint                    38

136.   Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

137.   For the claims under California's Unfair Competition Law, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## <u>Fourth Cause of Action</u>:

### Breach of Contract

### (By Plaintiff and the Class)

138.   Plaintiff incorporates each and every factual allegation set forth above.

139.   Plaintiff brings this cause of action on behalf of himself and the Class.

140.   Plaintiff and class members entered into contracts with Aquasana when they placed orders to purchase Products.

141.   The contracts provided that Plaintiff and class members would pay Aquasana for the Products ordered.

142.   The contracts further required that Aquasana provide Plaintiff and class members with Products that have a market value equal to the advertised list prices. They also required that Aquasana provide Plaintiff and the class members with the discount advertised. These were specific and material terms of the contract.

143.   The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and class members at the time they placed their orders.

144.   Plaintiff and class members paid Aquasana for the Products they ordered, and satisfied all other conditions of their contracts.

Class Action Complaint                                   39

145.   Aquasana breached the contracts with Plaintiff and class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount. Aquasana did not provide the discount that Aquasana had promised.

146.   Plaintiff provided Defendant with notice of this breach, by mailing notice letters to Defendant's registered agent and Texas headquarters on June 6, 2025.

147.   As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

148.   For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

### Fifth Cause of Action:

### Breach of Express Warranty

### (By Plaintiff and the Class)

149.   Plaintiff incorporates each and every factual allegation set forth above.

150.   Plaintiff brings this cause of action on behalf of himself and the Class.

151.   Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Aquasana Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

152.   This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

153.   In fact, Aquasana Products' stated market values were not the prevailing market values. Thus, the warranty was breached.

Class Action Complaint                           40

154.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's registered agent and Texas headquarters on June 6, 2025.

155.    Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

156.    For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the Class)**

157.    Plaintiff incorporates paragraphs 1-72 and 79-90 above.

158.    Plaintiff brings this cause of action in the alternative to his Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of himself and the Class.

159.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Aquasana Products and to pay a price premium for these Products.

160.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

161.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

162.    Plaintiff and the class seek restitution, and in the alternative, rescission.

Class Action Complaint                   41

163.   For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the class as a result of Defendant's unlawful conduct.

### Seventh Cause of Action:

### Negligent Misrepresentation

### (By Plaintiff and the Class)

164.   Plaintiff incorporates each and every factual allegation set forth above.

165.   Plaintiff brings this cause of action on behalf of himself and members of the Class.

166.   As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

167.   These representations were false.

168.   When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

169.   Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class Members read and reasonably relied on them.

170.   In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Aquasana Products.

171.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

172.   Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or

Class Action Complaint                    42

(c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

173.  For the negligent misrepresentation claim, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## **Eighth Cause of Action**:
### **Intentional Misrepresentation**
### **(By Plaintiff and the Class)**

174.  Plaintiff incorporates each and every factual allegation set forth above.

175.  Plaintiff brings this cause of action on behalf of himself and members of the Class.

176.  As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

177.  These representations were false.

178.  When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

179.  Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

180.  In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Aquasana Products.

181.  Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

182.  Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they

had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

183.   For the intentional misrepresentation claim, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## VII.   Relief.

184.   Plaintiff seeks the following relief for himself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

### **Demand For Jury Trial**

185.   Plaintiff demands the right to a jury trial on all claims so triable.

Dated: June 17, 2025                    Respectfully submitted,

                                        By: /s/ *Grace Bennett*
                                        Grace Bennett (Cal. Bar No. 345948)
                                        grace@dovel.com
                                        Simon Franzini (Cal. Bar No. 287631)
                                        simon@dovel.com

Class Action Complaint                    44

DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*